JESSICA KARP BANSAL (SBN 277347)
JIA FU*
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689
*jessica@ndlon.org*
*jennifer@ndlon.org*

*Counsel for Plaintiffs*

DANIEL MELO*
EMILY BURNS*
THE MELO LAW FIRM, PLLC
2920 Forestville Road
Ste 100, PMB 1192
Raleigh, NC 27616
(919) 348-9213
dan@themelolawfirm.com
emily@themelolawfirm.com

*Counsel for Plaintiffs*

*\*Pro Hac Vice forthcoming*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONAL DAY LABORER ORGANIZING NETWORK, NEW LABOR, RESISTENCIA EN ACCIÓN, AMERICAN FRIENDS SERVICE COMMITTEE, and DEPORTATION AND IMMIGRATION RESPONSE EQUIPO SUPPORT SERVICES<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | Civil Action No.: 2:26-cv-8904<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

*Defendants.*

## Introduction and Background

1. Plaintiffs National Day Laborer Organizing Network ("NDLON"), New Labor, Resistencia en Acción ("REA"), American Friends Service Committee ("AFSC"), and Deportation and Immigration Response Equipo Support Services ("DIRE") bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to declare unlawful and enjoin U.S. Customs and Border Protection's ("CBP"), U.S. Immigration and Customs Enforcement's ("ICE"), and U.S. Department of Homeland Security's ("DHS") continued improper withholding of all reasonably segregable, non-exempt agency records concerning mass worksite raids at bonded warehouses in New Jersey.

2. Since February 2025, as part of a national effort to increase immigration arrests, Defendants have conducted a series of seemingly warrantless mass worksite raids at bonded warehouses in New Jersey. Defendants stormed into bonded warehouses claiming

authority under 19 U.S.C. § 1555 ("bonded warehouses"), which provides CBP the right to enter bonded warehouses without a warrant to inspect goods stored there–not people working there. Throughout the course of these raids, more than a hundred community members have been detained and separated from their families.

3.    Defendants have used overwhelming force in executing these raids. They have arrived with dozens of agents, dressed in military fatigues and armed with rifles, dogs, heat sensors, and helicopters. They fully surround the warehouses and, once inside, agents carry out the raids in an aggressive and dehumanizing manner. In the months after their arrests, many workers were deported or remain detained out of state, far from family and friends. Despite substantial news coverage and public demands for transparency, Defendants have failed to provide any information or accountability for these operations.

4.    To address the urgent need for information, through FOIA requests described herein, Plaintiffs sought agency records regarding these raids from Defendants CBP, ICE, and DHS.

3

5. Defendants have failed to substantively respond, let alone produce any records in response to Plaintiffs' FOIA requests in contravention of the FOIA statute. The complete lack of substantive response and clear disregard for public records law further erodes the trust and stability of local communities, especially those of the Latine immigrant families who have been disproportionately affected by these raids.

6. Defendant CBP improperly denied Plaintiffs' request for expedited processing, failed to make a determination on Plaintiffs' FOIA request, as required by law, and failed to adequately search for responsive records and respond to Plaintiffs' FOIA request, in violation of the Act.

7. Defendant DHS failed to adequately search for responsive records and respond to Plaintiffs' FOIA requests, improperly closed Plaintiffs' FOIA requests in violation of the Act, and failed to task an internal search of the agency's records in violation of 6 C.F.R. § 5.4(d)(3).

8.     Defendant ICE failed to adequately search for responsive records and respond to Plaintiffs' FOIA request in violation of the Act.

9.     Plaintiffs and the public at large have a compelling interest in understanding Defendants' policies regarding warrantless entry into bonded warehouses and mass detention of workers. Plaintiffs' membership includes immigrant workers living and working in New Jersey. Many of these workers, their families, and the surrounding community have already been deeply affected by these raids. The public has a time-sensitive need to obtain accurate information about Defendants' practices to evaluate whether violations of federal law are taking place and meaningfully engage in the democratic process.

10.     Plaintiffs, which are organizations that advance and defend the rights and liberties of immigrants and low-wage workers in New Jersey and nationally, seek declaratory and injunctive relief requiring Defendants to immediately process and release the requested records.

//

//

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Plaintiffs' request for injunctive relief is properly subject to this Court's subject-matter jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(F) and 28 U.S.C. §§ 1331, 2201(a), and 2202.

12.    Plaintiffs have exhausted all administrative remedies in connection with their FOIA requests, as detailed below.

13.    Because Plaintiffs bring this action after constructively or actually exhausting administrative remedies, this Court's jurisdiction is based on 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(6)(C)(i).

14.    Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. §§ 1391(b)(1), (b)(2), (e)(1), as Plaintiff NDLON has its principal place of business in Pasadena, CA.

15.    Congress passed the Freedom of Information Act, 5 U.S.C. § 552, in 1966 "to establish a general philosophy of full agency disclosure," S. Rep. No. 89–813, at 3 (1965), and "to assure the availability of Government information necessary to an informed

electorate," H.R. Rep. No. 89–1497, at 12 (1966), 1966 U.S.C.C.A.N. 2418, 2429.

16.    The statute provides that, subject to certain enumerated exemptions for classified documents, agency personnel and medical files, confidential financial information, and the like (5 U.S.C. §§ 552(b)(1)-(9)), federal agencies generally must make their internal records available to the public upon request. *Id.* § 552(a)(3)(A).

17.    As the Supreme Court has recognized, FOIA's disclosure regime shines a light on government operations "to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

## PARTIES

18.    Plaintiff NDLON is a 501(c)(3) non-profit organization with its principal place of business in Pasadena, California. NDLON has member organizations in New Jersey and across the country, including in Los Angeles and surrounding counties. NDLON advocates for the rights of immigrant workers both in New Jersey and nationally. Since June 2025, NDLON has documented and advocated for transparency regarding large-scale immigration raids

in greater Los Angeles. NDLON has used its national network to connect members in Los Angeles, New Jersey, and around the country to share information about immigration raids affecting immigrant workers, including patterns of agency misconduct. NDLON distributes community education materials on immigration and labor matters nationally through its websites, social media platforms, radio stations, newspaper, and worker center network.

19. Plaintiff New Labor is a community organization based in New Jersey. New Labor aims to educate, organize, and fight for better working conditions and social justice for immigrant workers. The organization has a base of around 4,000 members in Hudson, Bergen, Essex, Morris, Union, Middlesex, Somerset, Monmouth, and Ocean Counties. New Labor provides community education on immigration matters through distribution of Know-Your-Rights materials, social media, in-person clinics, and workplace health and safety training for more than 1,000 workers annually. New Labor is a member of NDLON's national network.

20. Plaintiff REA is a grassroots volunteer-led organization and 501(c)(3) nonprofit that works to advance and protect the rights of

immigrants and working-class communities in New Jersey. REA works in Mercer County and throughout the state of New Jersey to promote immigrant workers' rights through advocacy, organizing, rapid response, and community services. REA has an independent media radio station that provides news and Know Your Rights information to communities throughout New Jersey. REA also creates and distributes accessible educational information on immigrant and workers' rights through social media, email distribution lists, community outreach, and workshops. REA is a member of NDLON's national network.

21.    Plaintiff AFSC is a 501(c)(3) nonprofit organization founded by Quakers that works for peace and social justice. For over 30 years, AFSC's New Jersey Immigrant Rights Program (NJIRP) has worked to advance the rights of immigrants at both the state and federal level. The NJIRP works towards policies that respect the rights and dignity of all immigrants. AFSC's New Jersey Immigrant Rights Program provides comprehensive legal support, holistic support services, as well as organizing and advocacy work. AFSC NJIRP is a member of NDLON's national network.

22.    Plaintiff DIRE is a community organization that supports individuals and families facing immigration detention and deportation in New Jersey. DIRE was founded in 2017 and is a program within Churches Improving Communities, a 501(c)(3) non-profit community development corporation. DIRE runs a bilingual hotline in English and Spanish that provides information and resources to immigrants and their families in New Jersey.

23.    Defendant U.S. Department of Homeland Security (DHS) is a Department of the Executive Branch of the U.S.  government tasked with overseeing, inter alia, immigration enforcement, border security, immigration detention, and immigration and citizenship benefits. Its component agencies include ICE, CBP, and United States Citizenship and Immigration Services (USCIS). Defendant DHS is an agency within the meaning of 5 U.S.C. § 551(1). On information and belief, DHS has possession, custody, and control of records responsive to Plaintiffs' FOIA request.

24.    Defendant ICE is a component of DHS tasked with the enforcement of immigration and customs laws and is responsible for the arrest, detention, and removal of immigrants. Defendant ICE is

10

an agency within the meaning of 5 U.S.C. § 551(1). ICE has possession, custody, and control of records responsive to Plaintiffs' FOIA request.

25. Defendant CBP is a component of DHS responsible for regulating international trade and enforcing U.S. trade, customs, and immigration regulations. Defendant CBP is an agency within the meaning of 5 U.S.C. § 551(1). CBP has possession, custody, and control of records responsive to Plaintiffs' FOIA request.

## STATUTORY AND REGULATORY FRAMEWORK

26. The Freedom of Information Act requires that federal agencies promptly release records within their possession upon request by a member of the public, unless a statutory exemption applies. 5 U.S.C. § 552(a)-(b).

27. The federal agency must "determine . . . whether to comply" with the FOIA request within twenty business days of receipt of the request. 5 U.S.C. § 552(a)(6)(A)(i). Subsequently, the agency must "immediately notify" the requestor of its determination and provide its reasoning. *Id.* If the agency determines to comply with the

request, it must "promptly" release responsive, non-exempt records to the requestor. 5 U.S.C. § 552(a)(6)(C)(i).

28.　Documents shall be furnished to requestors without any charge or at a reduced charge if "disclosure of the information is in the public interest" and the request "is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

29.　An "agency shall process as soon as practicable any request for records to which the agency has granted expedited processing" that are non-exempt and responsive, with any denial or failure to respond to an expedited processing request subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii).

30.　Under 5 U.S.C. § 552(a)(6)(E), agencies are to grant expedited processing of requests where (i) requestors demonstrate a "compelling need" for the documents when the requester is "primarily engaged in disseminating information," a "failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or when there exists an "urgency to inform the public concerning actual or alleged Federal Government activity,"

and (ii) "in other cases determined by the agency." *See, e.g., Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*, 542 F. Supp. 2d 1181, 1186 (N.D. Cal. 2008) (holding expedited processing was required where delayed production would stymie robust public debate of pending legislation); *Am. C.L. Union of N. California v. U.S. Dep't of Def.*, No. C 06-01698 WHA, 2006 WL 1469418, at *6 (N.D. Cal. May 25, 2006) (holding that expedited processing was required where the subject of the request was necessary for breaking news stories on issues of public importance, such as Defense Department surveillance on civil groups).

31.    6 C.F.R. § 5.5(e), which regulates DHS's timing for processing expedited FOIA requests, states that a request warrants expedited processing if it involves "[t]he loss of substantial due process rights" or the request concerns a matter of "widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iii)-(iv).

32.    While 5 U.S.C. § 552(a)(6)(C)(i) allows courts to retain jurisdiction and grant additional time for an agency to complete its

13

review for responsive records, this is only applicable if "the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i). If the agency fails to comply with FOIA's statutory time limits, the request is constructively denied, and Plaintiffs are deemed to have exhausted their administrative remedies. *Id.*

**STATEMENT OF FACTS**

**A. Bonded warehouses**

33.    Bonded warehouses, also known as customs warehouses or facilities, have contracts with CBP to store and process imported goods for companies that have yet to pay the necessary import duties and fees ("bonded goods").

34.    19 U.S.C. § 1555 gives CBP the authority to supervise bonded goods within bonded warehouses. The statute does not provide CBP with unfettered access to worksites or workers at bonded warehouses, or the authority to detain workers at these sites to investigate their immigration status. There is a clear distinction between the *goods* that are under CBP supervision due to their

14

transitory nature from outside the U.S., and the *workers* who work at the warehouse.

35.    Although bonded warehouses process goods from abroad, they are not necessarily located at ports of entry. Rather, bonded warehouses can be located anywhere within the United States. Many bonded warehouses are located within the U.S. interior.

36.    Many bonded warehouse workers therefore live in the U.S. interior while working at such warehouses. There is no greater likelihood that someone who works at a bonded warehouse has recently come from abroad than any other person in the country.

37.    In New Jersey, a number of workers at bonded warehouses are staffed through temporary services agencies. In this situation, workers generally do not have the option to choose which location they are assigned to work at and are not informed by the staffing agencies whether a warehouse is bonded or not.

**B.  New Jersey bonded warehouse raids**

38.    President Trump has charged DHS to "do all in their power to achieve the very important goal of delivering the single largest

15

Mass Deportation Program in History," leading to an escalation of aggressive immigration raids across the country.[1]

39. In 2025, Defendants conducted a series of immigration enforcement operations on bonded warehouses in New Jersey.[2]

40. While DHS and CBP, in separate instances, have each claimed that the agencies' operations on bonded warehouses were predicated on "warehouse inspections," the pre-planned, tactical nature of the raids and use of militarized equipment demonstrate the agencies' true motive: to arrest and detain non-citizens working in the bonded warehouses.[3]

---

[1] *See* Samantha Waldenberg et al., *Trump orders ICE officers to expand deportation efforts in Democratic cities,* CNN (June 16, 2025), https://www.cnn.com/2025/06/16/politics/trump-immigration-democratic-deportation-efforts.

[2] *See* Ana Ley, *Another Front in the Trump Immigration Crackdown: Import Warehouses*, N. Y. TIMES (Dec. 27, 2025), https://www.nytimes.com/2025/12/27/nyregion/immigration-arrests-import-warehouses-new-jersey.html.

[3] *See id.*; Luis Ferré-Sadurní et al., *Federal Agents Detain Dozens of Workers in Raid at New Jersey Warehouse*, N. Y. TIMES (Aug. 20, 2025, at 11:16 p.m. ET), https://www.nytimes.com/2025/08/20/nyregion/immigration-raid-warehouse-edison-new-jersey.html.

41.     For instance, during the August 2025 CBP-led operation in a bonded warehouse in Edison, New Jersey — an operation the agency has tried to characterize as a surprise inspection — federal agents descended on the warehouse and blocked the exits. Those inside were not free to leave.[4] Officers proceeded to spend hours checking workers' immigration statuses, ultimately arresting twenty-nine people. Some workers who sought to exercise their constitutional right to leave the warehouse during the chaos sustained injuries at the hands of federal agents; other workers risked their lives by scaling the warehouse's "towering rafters" to exercise their constitutional right to leave. Law enforcement agents then deployed drones into the warehouse to search for them.[5]

42.     DHS similarly characterized an October 29, 2025, operation on a bonded warehouse in Avenel, New Jersey, as an "inspection." During the operation, "[m]asked officers carrying long rifles blocked

---

[4] *See* Luis Ferré-Sadurní et al., *Federal Agents Detain Dozens of Workers in Raid at New Jersey Warehouse*, N. Y. TIMES (Aug. 20, 2025, at 11:16 p.m. ET), https://www.nytimes.com/2025/08/20/nyregion/immigration-raid-warehouse-edison-new-jersey.html.

[5] *Id.*

17

exits and used dogs and heat detectors" in order to find workers hidden within the warehouse and had a helicopter on site circling overhead. Witnesses estimated that more than 50 immigration agents were deployed to the warehouse. Agents ultimately arrested forty-six people.[6]

43.    Workers arrested during the "warehouse inspections" and subsequently held in ICE immigration detention include non-citizens with work permits and pending immigration matters.[7] One worker, an 18-year-old named Jhonatan who was working to save up for college, was arrested during the October 2025 raid[8] and detained for

[6] *See* Christine Sloan, *Federal agents take dozens of warehouse workers into custody in Woodbridge, N.J.*, CBS NEWS (Oct. 29, 2025, at 17:35 ET), https://www.cbsnews.com/newyork/news/woodbridge-new-jersey-warehouse-workers-customers-and-border-protection/; Ana Ley, *Another Front in the Trump Immigration Crackdown: Import Warehouses*, N. Y. TIMES (Dec. 27, 2025), https://www.nytimes.com/2025/12/27/nyregion/immigration-arrests-import-warehouses-new-jersey.html.

[7] *See* Briana Vannozzi, *Immigration advocates decry ICE crackdown in NJ*, NJ SPOTLIGHT NEWS (Oct. 31, 2025), https://www.njspotlightnews.org/2025/10/immigrant-advocates-decry-ice-crackdown-in-nj/.

[8] Daysi Calavia-Robertson, *High school grad working to pay for college swept up in ICE raid. 'He was scared,' mom said.*, NJ.COM (Nov. 11, 2025), https://www.nj.com/news/2025/11/high-school-grad-

18

weeks. While detained, Jhonatan described being served rotten food and "enduring inhuman conditions," stating: "'No human being deserves this . . . we endured so much hunger and cold.'"[9]

44. Many of the arrested workers were detained at Delaney Hall Detention Facility. Delaney Hall was the subject of a weeks-long hunger and labor strike that began in May 2026 by detained people protesting against detention conditions. The strikers described "spoiled food, inadequate medical care, and poor living conditions" and alleged "physical abuse by guards, including being beaten and pepper-sprayed by a riot squad . . . ." During the strike period, DHS released all pregnant detainees from the detention center.[10]

---

working-to-pay-for-college-swept-up-in-ice-raid-he-was-scared-mom-said.html.

[9] *See* Ana Ley, *Another Front in the Trump Immigration Crackdown: Import Warehouses*, N. Y. TIMES (Dec. 27, 2025), https://www.nytimes.com/2025/12/27/nyregion/immigration-arrests-import-warehouses-new-jersey.html.

[10] Fabiola Cineas, *'They have nothing else to lose': Delaney Hall hunger strikes are a hallmark of resistance in detention*, THE GUARDIAN (Jun. 7, 2026), https://www.theguardian.com/us-news/2026/jun/07/us-migration-policy-detention-hunger-strikes.

45.     Numerous news reports have documented the profound impact of these raids on the safety and well-being of New Jersey communities, especially on the immigrant and Latine communities, which have been disproportionately affected.[11]

---

[11] *See, e.g.,* Ana Ley, *Another Front in the Trump Immigration Crackdown: Import Warehouses*, N. Y. TIMES (Dec. 27, 2025), https://www.nytimes.com/2025/12/27/nyregion/immigration-arrests-import-warehouses-new-jersey.html; Sophie Nieto-Munoz, *Advocates fear immigrant workers are targeted at warehouses storing imported goods*, N. J. MONITOR (Nov. 26, 2025), https://newjerseymonitor.com/2025/11/26/immigrant-workers-warehousesimported-goods/; Nicolette Cavallaro, *'It breaks my heart': Staten Islanders rally for teen allegedly detained by ICE,* SI LIVE (Nov. 8, 2025), https://www.silive.com/news/2025/11/it-breaks-my-heart-staten-islandersrally-for-teen-allegedly-detained-by-ice.html; Briana Vannozzi, *Immigration advocates decry ICE crackdown in NJ*, NJ SPOTLIGHT NEWS (Oct. 31, 2025), https://www.njspotlightnews.org/2025/10/immigrant-advocates-decry-ice-crackdown-in-nj/; Dan Alexander, *Moms In Handcuffs: Dozens Detained As ICE Storms Woodbridge Warehouse*, NEW JERSEY 101.5 (Oct. 30, 2025), https://nj1015.com/ice-raid-woodbridge-warehouse/; Luis Ferré-Sadurní et al., *Pair of Immigration Raids Disrupt a New Jersey Shipping Hub*, N. Y. TIMES (Aug. 22, 2025), https://www.nytimes.com/2025/08/22/nyregion/immigration-raids-edison-newjersey.html; Daniella Silva, *Advocates describe chaos and crying family members at a New Jersey immigration raid*, NBC NEWS (Aug. 21, 2025), https://www.nbcnews.com/news/us-news/immigration-raid-edison-new-jerseywarehouse-rcna226307; Luis Ferré-Sadurní et al., *Federal Agents Detain Dozens of Workers in Raid at New Jersey Warehouse*, N. Y. TIMES (Aug. 20, 2025), https://www.nytimes.com/2025/08/20/nyregion/immigration-raid-warehouse-edison-new-jersey.html; Caren Lissner, *ICE Arrests 16 In Raid Of Warehouse In North Jersey*, PATCH (Mar. 6, 2025),

46.     ICE detention is a life-threatening affair in the United States, especially in this moment of increased immigration enforcement[12] and decreased oversight of detention conditions.[13] Since early 2025, at least 50 individuals have already perished in ICE detention, the most in any period in at least two decades.[14]

https://patch.com/new-jersey/hoboken/icearrests-16-raid-hudson-county-nj-warehouse.

[12] *See* Ryan J. Foley et al., *ICE detainees are dying by suicide at an 'alarming' rate, an AP investigation finds*, AP (May 27, 2026), https://apnews.com/article/ice-suicide-deaths-detention-custody-d902169055292dfd27f5079e609e86ad; Sanjay Basu et al., *Mortality in US Immigration and Customs Enforcement Detention*, 335 JAMA 18 (2026); Maanvi Singh et al., *2025 was ICE's deadliest year in two decades. Here are the 32 people who died in custody*, THE GUARDIAN (Jan. 4, 2026) https://www.theguardian.com/usnews/ng-interactive/2026/jan/04/ice-2025-deaths-timeline.

[13] *See* Isabel Del Mastro et al., *ICE Inspections Plummeted as Detentions Soared in 2025*, POGO (Jan 12, 2026), https://www.pogo.org/investigates/ice-inspections-plummeted-as-detentions-soared-in-2025.

[14] *See* Casey Tolan, *How understaffing and DHS policy drives rising deaths in ICE detention centers*, CNN (May 15, 2026), https://www.cnn.com/2026/05/15/us/ice-immigration-detention-centers-medical-care-deaths-invs-vis; Press Release, Physicians for Hum. Rts., The 18th Death – and Fifth Death Attributed to Suicide – in ICE Custody this Year Spotlights Harms of Solitary Confinement, (May 1, 2026), https://phr.org/news/the-18th-death-and-fifth-death-by-suicide-in-ice-custody-this-year-spotlights-harms-of-solitary-confinement-phr/; St. John Barned-Smith & Ko Lyn Cheang, *Inside*

47.    This includes at least three deaths of people detained in New Jersey. Jean Wilson Brutus died at New Jersey immigration detention center Delaney Hall on December 12, 2025. ICE has yet to publicly release his manner of death.[15] And just in the last few

*ICE detention centers, medical misdiagnoses and delays prove deadly*, SF CHRONICLE (Apr. 9, 2026), https://www.sfchronicle.com/projects/2026/ice-detention-deaths/; Jazmine Ulloa et al., *Deaths in ICE Custody Are Growing. 'They Let Him Rot in There.'*, N.Y. TIMES (Mar. 29, 2026), https://www.nytimes.com/2026/03/29/us/ice-detention-deaths-immigrants.html?unlocked_article_code=1.XFA.Cln2.8qdgNERlxZ7o &smid=url-share; Andrew Beale & Ethan Corey, *UCLA Law Behind Bars Data Project Unveils New Category of Data: Deaths in ICE Custody*, UCLA L. BLOG (Mar. 1, 2026), https://uclaprisondata.org/blog/ucla-law-behind-bars-data-project-unveils-new-category-of-data-deaths-in-ice-custody; Lomi Kriel & Colleen Deguzman, *Six Deaths in six weeks: What to know about ICE detentions in Texas*, THE TEXAS TRIBUNE (Feb. 19, 2026), https://www.texastribune.org/2026/02/19/ice-detention-deaths-texas-east-montana-dilley-campos/; Ana Ley, *Wrenching Pain, a Severe Infection: An ICE Detainee Is Ordered Released*, N.Y. TIMES (Dec 9, 2025), https://www.nytimes.com/2025/12/09/nyregion/ice-detention-facilities-judges-criticism.html.

[15] *See* Sophie Nieto-Munoz, *Family of NJ migrant who died in federal custody seeks answers*, N.J. MONITOR (Feb. 9, 2026), https://newjerseymonitor.com/2026/02/09/family-of-nj-migrant-who-died-in-federal-custody-seeks-answers/; ICE DETAINEE DEATH REPORT: BRUTUS, JEAN WILSON, https://www.ice.gov/doclib/foia/reports/ddrJeanWilsonBrutus.pdf

weeks, two more people detained at Delaney Hall have died, one of whom ICE failed to disclose. [16]

**Compelling Need for Records Sought**

48.    Plaintiffs are not-for-profit worker centers and allied organizations that serve and respond to the needs of immigrant workers. Plaintiffs have a record of providing Know-Your-Rights training and otherwise disseminating information on immigrant and worker rights issues to the public through newsletters, social media, rapid response groups, and phone campaigns. However, to do so effectively, Plaintiffs require the requested records on Defendant communications, policies, and training regarding immigration operations on bonded warehouses.

49.    Defendants' actions in staging violent, large-scale arrests disguised as bonded warehouse inspections implicate core constitutional rights and liberty interests, including the right to due

---

[16] *See Detainee passes following medical emergency in New Jersey*, U.S. IMMIGR. & CUSTOMS ENF'T (Aug. 3, 2026), https://www.ice.gov/news/releases/detainee-passes-following-medical-emergency-new-jersey; *Rep. Rob Menendez says he has learned of third detainee death at Delaney Hall*, WABC (Aug. 8, 2026), https://abc7ny.com/post/3rd-delaney-hall-death-reported-rep-rob-menendez-ice-facility-newark-nj/19636775/.

process and the right against unreasonable search and seizure. Yet there is no transparency in how Defendants are carrying out these operations. Impacted individuals and community members alike have commented on the unprecedented, disruptive, and aggressive nature of the operations.[17]

50.     The harm to workers, and by extension, the business owners and warehouse operators who have reported becoming short-staffed in light of the operations, is immense. Thousands of workers have been subjected to disruption and fear, either during the highly intrusive and chaotic warehouse immigration enforcement operations, where heavily armed agents rush into their workplace and subject workers to hours of unlawful investigatory detention, or

---

[17] Christine Sloan, *Federal agents take dozens of warehouse workers into custody in Woodbridge, N.J.*, CBS NEWS (Oct. 29, 2025), https://www.cbsnews.com/newyork/news/woodbridge-new-jersey-warehouse-workerscustomers-and-border-protection/; Christine Queally, *'Very respectful student, very hard-working': Community rallies around teen detained in Avenel ICE raid*, NEW JERSEY NEWS (Nov. 7, 2025), https://newjersey.news12.com/very-respectful-student-very-hard-working-community-rallies-around-teen-detainedin-avenel-ice-raid.

for fear of an imminent immigration enforcement operation occurring at other warehouses.[18]

51.　Workers like New Jersey warehouse worker and asylum seeker, José, continue to live in fear that more immigration enforcement operations of this type may occur without warning in the workplace: "It's a psychological trauma, really wondering if you have to run, to hide, to know where you could hide, even if you did nothing wrong . . . ."[19]

---

[18] *See* Luis Ferré-Sadurní et al., *Pair of Immigration Raids Disrupt a New Jersey Shipping Hub*, N. Y. TIMES (Aug. 22, 2025), https://www.nytimes.com/2025/08/22/nyregion/immigration-raids-edison-newjersey.html; *Edison ICE raid leaves workers, families on edge*, (PBS television broadcast July 9, 2025), https://www.thirteen.org/programs/nj-spotlight-news/edison-ice-raids-1752089334/.

[19] Luis Ferré-Sadurní et al., *Pair of Immigration Raids Disrupt a New Jersey Shipping Hub*, N. Y. TIMES (Aug. 22, 2025), https://www.nytimes.com/2025/08/22/nyregion/immigration-raids-edison-newjersey.html (internal quotes omitted).

52. Throughout the country, federal immigration agents have a documented history of committing brutal acts of violence[20] and other alleged constitutional violations during these types of operations.[21]

53. As the warehouse immigration enforcement operations have affected New Jersey residents, especially those in the Latine and immigrant community, the people of New Jersey deserve to understand the policies that enabled these raids to occur. The public at large also remains in critical need of these records. Defendants' mass worksite raids at bonded warehouses represent a departure

---

[20] *See, e.g.*, Jamie Satterfield, *Video confirms abuse of immigrants by federal agents in East Tennessee slaughterhouse raid*, TN LOOKOUT (Aug. 25, 2022), https://tennesseelookout.com/2022/08/25/video-confirms-abuse-of-immigrants-by-federal-agents-in-east-tennessee-slaughterhouse-raid/.

[21] *See* Press Release, Southern Poverty Law Center, NILC and SPLC win class certification in lawsuit alleging ICE and IRS agents violated workers' civil rights during workplace raid, (Aug 11, 2022), https://www.splcenter.org/presscenter/nilc-and-splc-win-class-certification-lawsuit-alleging-ice-and-irs-agents-violated/; Anna Gallegos-Cannon, *Slaughterhouse workers allege brutality in case against federal agents in 2018 raid*, WPLN NEWS (Aug. 16, 2022), https://wpln.org/post/slaughterhouse-raid-bean-station-grainger-county/; Miriam Jordan, *In Rare Victory, Immigrants Prevail in Suit Over Meat Plant Raid*, N.Y. TIMES (Feb 27, 2023), https://www.nytimes.com/2023/02/27/us/meat-plant-raid-immigrants-tennessee.html.

from prior policy. These records will allow the public to evaluate government policy and its impact on their community, particularly in the context of an upcoming federal election.

54.    These operations have been the subject of widespread media attention, raising questions about the propriety of the government's actions.[22]

---

[22] *See, e.g.*, Ana Ley, *Another Front in the Trump Immigration Crackdown: Import Warehouses*, N. Y. Times (Dec. 27, 2025), https://www.nytimes.com/2025/12/27/nyregion/immigration-arrests-import-warehouses-new-jersey.html; Sophie Nieto-Munoz, *Advocates fear immigrant workers are targeted at warehouses storing imported goods*, N. J. Monitor (Nov. 26, 2025), https://newjerseymonitor.com/2025/11/26/immigrant-workers-warehousesimported-goods/; Nicolette Cavallaro, *'It breaks my heart': Staten Islanders rally for teen allegedly detained by ICE,* SI Live (Nov. 8, 2025), https://www.silive.com/news/2025/11/it-breaks-my-heart-staten-islandersrally-for-teen-allegedly-detained-by-ice.html; Briana Vannozzi, *Immigration advocates decry ICE crackdown in NJ*, NJ Spotlight News (Oct. 31, 2025), https://www.njspotlightnews.org/2025/10/immigrant-advocates-decry-ice-crackdown-in-nj/; Dan Alexander, *Moms In Handcuffs: Dozens Detained As ICE Storms Woodbridge Warehouse*, New Jersey 101.5 (Oct. 30, 2025), https://nj1015.com/ice-raid-woodbridge-warehouse/; Christine Sloan, *Federal agents take dozens of warehouse workers into custody in Woodbridge, N.J.*, CBS News (Oct. 29, 2025), https://www.cbsnews.com/newyork/news/woodbridge-new-jersey-warehouse-workers-customers-and-border-protection/; Luis Ferré-Sadurní et al., *Pair of Immigration Raids Disrupt a New Jersey Shipping Hub*, N. Y. TIMES (Aug. 22, 2025), https://www.nytimes.com/2025/08/22/nyregion/immigration-raids-edison-newjersey.html; Daniella Silva, *Advocates describe chaos and*

27

55. Records regarding the government's conduct in carrying out these mass worksite raids are therefore of urgent concern for Plaintiffs and the community members they represent and represent a compelling need for expedited processing.

56. FOIA's affirmative disclosure provisions, known as the "reading-room" provisions, require agencies to proactively make public certain tranches of agency materials. *See Animal Legal Def. Fund v. U.S. Dep't of Agric.,* 935 F.3d 858, 862 (9th Cir. 2019). Among those provisions are 5 U.S.C. § 552(a)(2)(C)&(D), which require agencies to publish "administrative staff manuals and instructions to staff that affect a member of the public," copies of records previously released to a requester and due to the subject

*crying family members at a New Jersey immigration raid*, NBC News (Aug. 21, 2025), https://www.nbcnews.com/news/us-news/immigration-raid-edison-new-jerseywarehouse-rcna226307; Luis Ferré-Sadurní et al., *Federal Agents Detain Dozens of Workers in Raid at New Jersey Warehouse*, N. Y. Times (Aug. 20, 2025), https://www.nytimes.com/2025/08/20/nyregion/immigration-raid-warehouse-edison-new-jersey.html; *Edison ICE raid leaves workers, families on edge,* (PBS television broadcast July 9, 2025), https://www.thirteen.org/programs/nj-spotlight-news/edison-ice-raids-1752089334/; Caren Lissner, *ICE Arrests 16 In Raid Of Warehouse In North Jersey*, PATCH (Mar. 6, 2025), https://patch.com/new-jersey/hoboken/icearrests-16-raid-hudson-county-nj-warehouse; 6 C.F.R. § 5.5(e)(iv).

matter are likely to be requested again, or are records "that have been requested 3 or more times . . . ." 5 U.S.C. § 552(a)(2)((C)&(D)(i)-(II).

57.    Yet, in violation of FOIA affirmative disclosure provisions 5 U.S.C. § 552(a)(2), none of the defendants in this case have published any guidance, interpretation, or instruction to staff that affects these members of the public. And, as alleged below, no agency has complied with FOIA's timing provisions by making a determination in response to any of the FOIA requests necessitated by the agencies' failure to comply with FOIA's affirmative disclosure provisions.

58.    The result is opaque governance and enforcement of a racialized anti-immigrant agenda through fear and violence.[23]

---

[23] "We live in a society where foreign [noncitizen] terrorists have unlimited free legal representation. But Americans whose communities have been stolen from them are left without recourse. We are rebalancing the scales." Stephen Miller (@Stephen M), X (April 19, 2025), https://x.com/StephenM/status/1913620209883099203; "NYC is the clearest warning yet of what happens to a society when it fails to control migration." Stephen Miller (@Stephen M), X (June 25, 2025), https://x.com/StephenM/status/1937861469431079401.

"Through mass deportations, the Trump Administration is freeing up resources, revitalizing opportunity, and restoring safety — delivering tangible results that put American citizens first." Press

59.   Because of the nature of part of the records Plaintiffs request — which may include messenger application communications and other forms of communication that DHS does not typically store or archive as required — the agencies' failure to make a timely determination, task appropriate custodians with searches and notify them of their preservation obligations raises the prospect that a significant portion of the most important contemporaneous records responsive to Plaintiffs' request will be destroyed forever, absent action from this Court. [24]

---

Release, The White House, Deportations Are Improving Americans' Quality of Life, (Jan 14, 2026), https://www.whitehouse.gov/releases/2026/01/mass-deportations-are-improving-americans-quality-of-life/.

[24] *See Citizens for Responsibility & Ethics in Wash v. U.S. Dep't of Homeland Sec.*, No. 22-cv-3350 (TSC), 2024 WL 1052538, slip op. at 12, (noting that Defendants' declarations showed that it was not "substantially likely that any text messages would be recovered from the agency issued phones," which included a declaration describing how three DHS officials wiped their phones); OFFICE OF INSPECTOR GEN., DEP'T OF HOMELAND SEC., CBP TARGETED AMERICANS ASSOCIATED WITH THE 2018-2019 MIGRANT CARAVAN 28 (Sept. 20, 2021) ( "four CBP officials who sent information to Mexican officials about Americans told us they communicated with their Mexican counterparts using Whatsapp. None of the four officials retained all their relevant WhatsApp messages . . . ."); *Hoffman v. U.S. Customs & Border Prot.*, 2:20-cv-06427-AB, slip op. at 33 (E.D. Pa. Sept. 10, 2025) ("In summary, Plaintiff identified two [CBP Officials] who were

**C. Plaintiffs' FOIA Requests**

60.    On March 17, 2026, Plaintiffs submitted a FOIA request via the Secure Release portal to ICE, DHS, and CBP seeking records from January 1, 2025, and onward concerning the New Jersey Bonded Warehouse raids. Plaintiffs' FOIA requests to each agency are attached as Exhibit A, Plaintiffs' CBP FOIA request and agency responses; Exhibit B, Plaintiffs' DHS FOIA request and agency responses; and Exhibit C, Plaintiffs' ICE FOIA request and agency responses.

61.    The requests centered on obtaining records regarding (1) general information about bonded warehouses in New Jersey and bonded warehouse raids nationally; (2) policy, guidance, and training materials concerning raids, warrantless entries, and investigations of bonded warehouses in New Jersey; (3) agency communications regarding New Jersey Bonded Warehouse Raids; and (4) certain

---

likely to have responsive records on their mobile devices. Of the two mobile devices active from January 1 to February 21, 2019, one had its memory wiped, and the other was "turned in" but has since been mysteriously lost to the sands of time.").

31

documentation of the New Jersey Bonded Warehouse Raids. *See* Exhibits A-C at 1-9.

62. Plaintiffs sought expedited processing of the FOIA requests, noting the compelling need to inform the public of "ongoing, large-scale immigration enforcement operations" which have created "rippling social and economic harm for impacted individuals, their families, and whole communities" and also concern "federal agencies' compliance with the U.S. Constitution."[25] *See* Exhibits A-C at 9.

63. Plaintiffs additionally sought fee waivers for their FOIA requests, as Plaintiffs are nonprofit entities with no commercial interest in the records requested, and the records are crucial to public understanding of the Defendants' operations. *See* Exhibits A-C at 7-8.

//

//

---

[25] Where an agency has failed to comply with the statutory twenty-day deadline, the agency "presumptively also fails to process an expedited request 'as soon as practicable.'" *Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*, 542 F. Supp. 2d 1181, 1186 (N.D. Cal. 2008) (internal quotation omitted).

***CBP's response to Plaintiffs' FOIA request***

64. On April 23, 2026, CBP acknowledged Plaintiffs' request and assigned it a case number of CBP-FO-2026-076054. In its response, the agency claimed that the request constituted an "unusual circumstance," as it was of "substantial interest" to another agency and/or subcomponents of CBP, and invoked a 10-day extension to determine whether to comply with the request. *See* Exhibit A, 10-12. CBP did not acknowledge Plaintiffs' request for expedited processing in its response, yet the SecureRelease portal showed that the expedited processing request had been "declined." *See id.* at 19.

65. On June 29, 2026, Plaintiffs appealed CBP's constructive denial of Plaintiffs' request for expedited processing and CBP's constructive denial of Plaintiffs' FOIA request by failing to respond within FOIA's statutorily prescribed time limits. *See id.* at 22.

66. To date, Plaintiffs have received no further responses from CBP concerning their FOIA request.

67. As of the date of this filing, CBP has not completed its search and review of records responsive to Plaintiffs' request.

68. As of the date of this filing, CBP has failed to make a determination on Plaintiffs' request for records.

69. As of the date of this filing, CBP has not indicated to Plaintiffs which records it will produce and which records it seeks to withhold.

70. As of the date of this filing, CBP has not taken action on Plaintiffs' request that Plaintiffs can appeal.

71. As of the date of this filing, CBP has constructively denied Plaintiffs' request for expedited processing.

72. As of the date of this filing, CBP has failed to make a determination on Plaintiffs' request for a fee waiver.

### DHS's response to Plaintiffs' FOIA request

73. On May 12, 2026, DHS acknowledged Plaintiffs' request. DHS stated that the DHS Privacy Office had received the request on April 13, 2026, and determined that the request was a matter under the purview of the ICE and CBP FOIA Offices and transferred the request to those FOIA Officers for processing. *See* Exhibit B at 10-12.

74. DHS also noted that while it did not consider transferring the request to be an adverse action, Plaintiffs had the right to appeal

the transfer and assigned the request a reference number of 2026-HQFO-02088. *See id.* at 11-12.

75. On June 29, 2026, Plaintiffs appealed DHS's transfer of the FOIA request to ICE and CBP. Plaintiffs stated that they considered the transfer to "be an adverse action and a constructive denial of the request under 5 U.S.C. § 552(A)(6)(A)" and appealed "DHS's denial of the request and failure to conduct an adequate search." *See id.* at 23-24.

76. On July 8, 2026, DHS acknowledged Plaintiffs' appeal and assigned the appeal tracking number 2026-HQAP-00120. DHS did not acknowledge Plaintiffs' prior request for expedited processing in its response. The only mention of expedited processing was a general footnote in the July 8, 2026, letter stating "Appeals of expedited treatment denials will be handled on an expedited basis." *See id.* at 26.

77. To date, Plaintiffs have received no further responses from DHS concerning their FOIA request. To date, Plaintiffs have received no responses from ICE or CBP regarding DHS's referral.

78. As of the date of this filing, DHS has not completed its search and review of records responsive to Plaintiffs' request.

79. As of the date of this filing, DHS has failed to make a determination on Plaintiffs' request for records.

80. As of the date of this filing, DHS has not indicated to Plaintiffs which records it will produce and which records it seeks to withhold.

81. As of the date of this filing, DHS constructively denied Plaintiffs' request for expedited processing.

82. As of the date of this filing, DHS has failed to make a determination on Plaintiffs' request for a fee waiver.

***ICE's response to Plaintiffs' FOIA request***

83. On May 22, 2026, ICE acknowledged Plaintiffs' request and assigned it a case number of 2026-ICFO-20806. ICE noted that it had received the request on March 17, 2026, and that the agency determined that the information sought was under the purview of CBP and transferred the request to a CBP FOIA Officer. ICE informed Plaintiffs of their right to appeal the determination. *See* Exhibit C at 10.

84. In the May 22, 2026, communication, ICE failed to make a determination regarding Plaintiffs' request for expedited processing of the FOIA request and Plaintiffs' request for a fee waiver. *See id.*

85. On June 29, 2026, Plaintiffs appealed ICE's transfer of the FOIA request to CBP. Plaintiffs stated that they considered the May 22, 2026, letter from ICE to have "constructively denied the request" and appealed "ICE's denial of the request and referral to CBP." *See id.* at 21.

86. On June 30, 2026, ICE acknowledged Plaintiffs' appeal, assigned the appeal tracking number 2026-ICAP-00467, and noted that the appeal was received by ICE on June 29, 2026. ICE did not acknowledge Plaintiffs' prior request for expedited processing in its response. *See id.* at 23.

87. On July 28, 2026, ICE notified Plaintiffs that the agency "has determined that new search(es) or, modifications to the existing search(es) could be made," and remanded Plaintiffs' appeal to the ICE FOIA Office "for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents." *See id.* at 25-28.

37

88. To date, Plaintiffs have received no further responses from ICE concerning their FOIA request.

89. As of the date of this filing, ICE has failed to make a determination on Plaintiffs' request for expedited processing.

90. As of the date of this filing, ICE has failed to make a determination on Plaintiffs' request for a fee waiver.

## CLAIMS FOR RELIEF

### COUNT I
### FAILURE TO CONDUCT AN ADEQUATE SEARCH
### VIOLATION OF 5 U.S.C. § 552
### AGAINST DHS AND CBP

91. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

92. Plaintiffs properly requested records within the possession, custody, and control of Defendants.

93. Defendants have failed to conduct an adequate search for records responsive to Plaintiffs' FOIA requests.

94. Defendants are obligated under 5 U.S.C. § 552(a)(3)(C) to conduct a reasonable search for records responsive to Plaintiffs' requests within FOIA's timing requirements.

95. Defendants have not conducted a "search reasonably calculated to uncover all relevant documents" pursuant to Plaintiffs' detailed and specific FOIA requests.

96. Defendants are also required and have failed to "make reasonable efforts to search for the records in electronic form or format." 5 U.S.C. § 552(a)(3)(C).

**COUNT II**
**FAILURE TO MAKE A DETERMINATION**
**VIOLATION OF 5 U.S.C. § 552**
**AGAINST DHS AND CBP**

97. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

98. FOIA requires an agency to make a determination within a maximum of 30 working days under *Citizens for Responsibility and Ethics in Washington (CREW) v. Federal Election Commission. See* 711 F.3rd 180 (D.C. Cir. 2013) (Kavanaugh, J.).

99. "[I]n order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the

requester that it can appeal whatever portion of the determination is adverse." *CREW*, 711 F.3rd at 188.

100.  By failing to make a determination on Plaintiffs' FOIA requests within the mandated statutory timeframe, by failing to disclose and release the requested records, and by failing to conduct an adequate search reasonably calculated to uncover responsive records, Defendants have violated the public's right, advanced by the Plaintiffs, to agency records under 5 U.S.C. §§ 552 et seq.

### COUNT III
### FAILURE TO ESTIMATE A DATE OF PRODUCTION
### VIOLATION OF 5 U.S.C. § 552(a)(7)(B)(ii)
### AGAINST DHS AND CBP

101.  Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

102.  FOIA requires defendants to "establish a telephone line or Internet service that provides information about the status of a request" including "an estimated date on which the agencies will complete action on the request." 5 U.S.C. § 552(a)(7)(B).

103.  In violation of this statute, Defendants failed to provide an estimated date on which the requests would be completed.

40

## COUNT IV
## FAILURE TO MAKE REASONABLY SEGREGABLE, NON-EXEMPT RECORDS PROMPTLY AVAILABLE
## VIOLATION OF 5 U.S.C. § 552(a)(3)
## AGAINST ALL DEFENDANTS

104. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

105. Upon request, an "agency . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

106. Defendants have violated this provision by failing to make records responsive to Plaintiffs' requests "promptly available."

## COUNT V
## VIOLATION OF 5 U.S.C. § 552(a)(4)(B)
## UNLAWFUL WITHHOLDING OF AGENCY RECORDS
## AGAINST DHS AND CBP

107. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

108. Defendants are government agencies subject to the FOIA and must therefore make reasonable efforts to search for and release requested records and otherwise lawfully support and provide the basis for any withholdings made pursuant to the exemptions provided by FOIA.

41

109. Plaintiffs have a legal right under the FOIA to the timely search and release of responsive, non-exempt agency records responsive to the Plaintiffs' FOIA requests.

110. Defendants failed to conduct a timely search and release responsive, non-exempt agency records in response to the Plaintiffs' FOIA requests.

## COUNT VI
## VIOLATION OF FOIA FOR IMPROPER DENIAL OF PLAINTIFFS' REQUEST FOR EXPEDITED PROCESSING AGAINST ALL DEFENDANTS

111. Plaintiffs repeat and re-allege all allegations contained in the foregoing paragraphs.

112. Plaintiffs properly requested records within the possession, custody, and control of Defendants.

113. Defendants are agencies subject to FOIA.

114. By failing to respond timely to Plaintiffs' requests for expedited processing, Defendants have violated Plaintiffs' rights under 5 U.S.C. § 552(a)(6)(E) and Defendants' own regulations.

115. Because Defendants failed to comply with the applicable time-limit provisions of FOIA, Plaintiffs constructively exhausted administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

42

## COUNT VII
### VIOLATION OF FOIA FOR IMPROPER DENIAL OF PLAINTIFFS' REQUEST FOR FEE WAIVER AGAINST ALL DEFENDANTS

116.  Plaintiffs repeat and re-allege all allegations contained in the foregoing paragraphs.

117.  FOIA requires an agency to provide records at no charge or at reduced charge "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

118.  In addition, an agency "shall not assess any search fees" if it fails to comply with the time limits in subparagraph 6 of FOIA, including the time limit to "determine within 20 days . . . after the receipt of any such request whether to comply with such request." 5 U.S.C. § 552(a)(4)(A)(viii); § 552(a)(6)(A)(i).

119.  Plaintiffs are requesters with no commercial interest in the records sought and will make responsive records available to the public at no charge.

43

120.  Plaintiffs are thus eligible for a fee waiver under 5 U.S.C.

§ 552(a)(4)(A)(iii) and entitled to a fee waiver under 5 U.S.C.

§ 552(a)(4)(A)(viii).

121.  By failing to respond to Plaintiffs' requests for fee waivers,

Defendants have denied Plaintiffs' rights under 5 U.S.C.

§ 552(a)(4)(A)(iii).

**COUNT VIII**
**PATTERN AND PRACTICE OF VIOLATION OF**
**AFFIRMATIVE DISCLOSURE REQUIREMENTS**
**AGAINST ALL DEFENDANTS**

122.  Plaintiffs re-allege and incorporate by reference all

allegations in the foregoing paragraphs as if fully set forth herein.

123.  Under FOIA, agencies have a duty to proactively disclose to

the public certain commonly requested or likely to be requested

records. *See* 5 U.S.C. § 552(a)(2)(D).

124.  Defendants have a pattern and practice of violating their

proactive disclosure requirements under FOIA.

//

//

//

**COUNT IX**

44

## FAILURE TO TASK A SEARCH FOR INTERNAL AGENCY RECORDS IN VIOLATION OF 6 C.F.R. § 5.4 AGAINST DEFENDANT DHS

125.　Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

126.　While DHS regulation 6 C.F.R. § 5.4., titled "Responsibility for responding to requests," describes how DHS may refer "the responsibility for responding to the request or portion of the request to the component or agency best able to determine whether to disclose the relevant records," the regulation also states that "[o]rdinarily, the component or agency that created or initially acquired the records will be presumed to be best able to make the disclosure determination." 6 C.F.R. § 5.4(d)(3).

127.　Plaintiffs allege DHS failed to task a search for their own records that correspond to Plaintiffs' request and instead improperly determined that only other agencies held responsive records.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

　　a.　enter judgment on all counts in favor of Plaintiffs and against Defendants;

b. order Defendants DHS and CBP to immediately identify all custodians who may have responsive records and ensure no media, messages, videos, or other agency records responsive to Plaintiffs' requests are overwritten or destroyed, and certify to the Court that they have done so;

c. declare Defendants DHS and CBP's withholdings under the FOIA unlawful and enjoin Defendants from continuing to withhold all non-exempt records responsive to the FOIA Requests;

d. order Defendants to grant expedited processing and make promptly available all non-exempt records within 20 days of the Court's order, or by such other date as the Court deems appropriate, all non-exempt records responsive to the FOIA Requests, all segregable records responsive to the FOIA Requests, and indices justifying the withholding of any responsive records withheld under any claim of exemption;

e. retain jurisdiction of this action to ensure that no agency records are wrongfully withheld, including, if necessary,

46

judicial review of any claim by a Defendant that requested information is exempt from disclosure;

f.  enjoin Defendants from assessing fees or costs for the processing of the FOIA Request;

g.  order Defendants to comply with Section 552(a)(2)'s affirmative disclosure provisions *instanter* by posting to their respective FOIA reading rooms the (a)(2) materials pertaining to bonded warehouses and these operations within no later than 45 days following the service of this Complaint;

h.  award Plaintiffs reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A); and

i.  award Plaintiffs such further relief as the Court deems just, equitable, and appropriate.

Dated: August 11, 2026                    Respectfully submitted,


                                   By:    */s/* Jessica Karp Bansal
                                          JESSICA KARP BANSAL

47

/s/ Jia Fu
JIA FU*


By:    /s/ Daniel J. Melo
DANIEL MELO*

/s/ Emily Burns
EMILY BURNS*

*Counsel for Plaintiffs*

*\*Pro Hac Vice forthcoming*

48